UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>     vs.<br><br>CODY ALLEN NOWAK,<br><br>               Defendant. | 4:14-CR-40118-KES<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Pending is Defendant Cody Allen Nowak's Motion to Suppress Evidence (Doc. 22). A hearing was held on January 6, 2015. Nowak was personally present and represented by his attorney of record, Jason Tupman. The Government was represented by Assistant United States Attorney Jennifer Mammenga. One witness testified at the hearing. One exhibit was received into evidence. Both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Nowak's Motion to Suppress be DENIED.

## JURISDICTION

Nowak is charged in an Indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  The pending motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Standing Order dated October 16, 2014.

## FACTUAL BACKGROUND

The court makes the following findings of fact based on the testimony and evidence summarized below.

### A.    Sioux Falls Police Officer Scott Vander Velde

Officer Scott Vander Velde was on duty on August 7, 2014.  Vander Velde was parked in his patrol car, watching a residence.  A vehicle with expired license plate tags pulled up in front of the residence.  Vander Velde saw a person get into the passenger seat of the vehicle, but he was not close enough to identify the person.  Vander Velde decided to initiate a traffic stop based on the expired license plate tags.

Vander Velde stopped the vehicle at 11th Street and Prairie Avenue in a parking lot in front of a casino in Sioux Falls, South Dakota.  Nowak exited from the front passenger seat of the vehicle.  Vander Velde recognized Nowak from a previous encounter. Vander Velde called Nowak by name and instructed him to get back into the vehicle.[1]  Vander Velde returned to his patrol car to

---

[1] This cannot be heard on the DVD because the audio was not yet activated at this point in the video.

2

call the stop in to dispatch.  At that time, Nowak exited the car a second time and ran from the scene.

The driver's name was Harry Madsen.  When Vander Velde approached Madsen's car, Madsen can be heard saying "I don't know what's going on!"  By then, Nowak had fled the scene, and Vander Velde did not believe he would be returning.[2]  From the DVD, the following conversation about the relationship between Madsen and Nowak and Madsen's knowledge of the backpack can be discerned:

| | |
|---|---|
| Vander Velde: | Is that his backpack? |
| Madsen: | Yea. |
| Vander Velde: | OK |
| Vander Velde: | Can I ask you a question sir, when you picked him up, did he walk in with this backpack? |
| Madsen: | He come, yea, that was his backpack. |
| Vander Velde: | OK. |
| Madsen: | That's not mine. |
| Vander Velde: | There's nothing else in the car? |
| Madsen: | No, you can look. |
| Vander Velde: | I can search the car? |

---

[2] The DVD received into evidence depicts the dash cameras of two other officers who were called to the scene to assist.  Before arriving at the scene, however, the other officers canvassed the area looking for Nowak.  They did not find him.  Nowak did not return to the scene during the approximately twenty-four minute traffic stop.

3

| Madsen: | Yea, go ahead. |
| Vander Velde: | Do you know that kid? |
| Madsen: | I just know him from my wife's son. |
| Vander Velde: | Ok, your wife's son.  What's your wife's son's name? |
| Madsen: | Ben Carter.  He's in jail. |
| Vander Velde: | Ben's in jail, OK. |
| Madsen: | And he just calls me once in a while, and I give him a ride.  And I don't ask anything, because he's a friend, so I just do it. |
| Vander Velde: | So he just called you like right before you picked him up and said "give me a ride." |
| Madsen: | Yea, I was eating lunch.  And he said hey can you come pick me up and I said sure, I will be right there. |

* * *

| Vander Velde: | Did he tell you where he wanted you to take him to? |
| Madsen: | No, he just asked for a ride and I said OK.  All of the sudden he said turn here, turn here.  And I did.  Then all of the sudden BOOM (gesturing). |
| Vander Velde: | Did he say why? |
| Madsen: | No!  He just went booya! (gesturing).  I was amazed.  I said what the f__.  I was in there in there going (gesturing). |

* * *

| Vander Velde: | I'm going to give you a bit of advice. |
| Madsen: | I'm not giving him another ride. |
| Vander Velde: | Bad news.  I know him personally too. |

4

| Madsen: | I maybe gave him a ride three or four times. |
|---|---|
| Vander Velde: | If I see you again in the future, after I gave you this warning, I'm going to assume you are in cahoots.  I am going to assume that. |

Vander Velde asked permission to search the vehicle but did not specifically ask to search the back pack.  Madsen gave permission to search. Another officer arrived with a drug dog.[3]  The dog sniffed the backpack but did not alert.  Vander Velde searched the back pack.  He does not recall whether he searched the vehicle.  The video depicts two other officers who arrived at the scene looking inside the vehicle while Vander Velde looks through the backpack, but does not depict an extensive search of the vehicle.

Inside the backpack Vander Velde found a High-Point .45 caliber handgun wrapped in a bandana.   Vander Velde also found some personal hygiene items and clothes.  The video depicts the officers removing what appear to be several items of clothing from the backpack.  Vander Velde does not recall whether he took the back pack into evidence (the video shows he returned the backpack to Madsen's vehicle at the end of the traffic stop, but retained the handgun).  Vander Velde was not aware there were any warrants for Nowak's arrest at the time of the traffic stop.  Ultimately, Vander Velde decided not to issue Madsen a ticket for the expired license plate.

---

[3] After Vander Velde explained the situation to the canine officer, the canine officer is heard on the DVD telling Vander Velde "I can sniff it but he doesn't have any expectation of privacy in abandoned property."

## DISCUSSION

Nowak alleges the officer's search of his backpack was a violation of his Fourth Amendment right to be free of unreasonable search and seizures. Specifically, Nowak alleges the search of his backpack was illegal because: (1) officers did not have a search warrant and (2) the driver's consent to search the car did not extend to Mr. Nowak's backpack. Nowak asserts he has standing to object to the search of his backpack because he had a reasonable expectation of privacy in the backpack. The government alleges the search was valid because Nowak abandoned the backpack prior to the officer's search, and because Vander Velde reasonably relied upon Madsen's consent to search.

## A.   Burden of Proof

As a general rule, the burden of proof is on the defendant who seeks to suppress evidence, United States v. Phillips, 540 F.2d 319, 326 (8th Cir.1976), but on the government to justify a warrantless search or seizure. United States v. Bruton, 647 F.2d 818, 822 (8th Cir.1981). The standard of proof is a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489 (1972).

## B.   Abandonment

The usual rule under the Fourth Amendment is that a valid search warrant supported by probable cause must first be obtained before a search is conducted. California v. Carney, 471 U.S. 386, 390 (1985). The Fourth Amendment is not implicated, however, by a search of property that has been abandoned. United States v. James, 534 F.3d 868, 873 (8th Cir. 2008). The

6

government bears the burden of proving abandonment by a preponderance.

United States v. Kelly, 529 F.2d 1365, 1371 (8th Cir. 1976).

> In James, the Eighth Circuit summarized the principles of abandonment:

> A warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment. United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994). The issue "is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished h[is] reasonable expectation of privacy so that the search and seizure is valid." United States v. Hoey, 983 F.2d 890, 892-93 (8th Cir. 1993) (other citations omitted). Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent. See United States v. Rem, 984 F.2d 806, 810 (7th Cir. 1993). "This determination is to be made in light of the totality of circumstances, and two important factors are denial of ownership and physical relinquishment of the property." United States v. Nordling, 804 F.2d 1466, 1469 (9th Cir. 1986). We consider only the information available to the officers at the time of the search. See Rem, 984 F.2d at 811 ("In order to determine whether a pre-search abandonment has occurred, the flow of information considered stops at the moment the police officer opened the suitcase.").

James, 534 F.3d at 873 (quoting United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997)).

In James, the defendant had been staying in a motel room, but on the day he was to check out, he took his personal belongings and fled after a female called police and advised James assaulted her. Id. at 870-71. Upon entering the room, the police officer noted all of James' personal belongings were gone and all the trash was in the trash can. Id. Upon searching the room to discover evidence of the assault, the officer discovered evidence that a dye

7

pack had exploded on some money and connected this with a recent bank robbery.  Id. at 871-72.  The Eighth Circuit held James abandoned the room and its contents.  Id. at 874.  By leaving the room and taking his personal belongings with him on the day he was supposed to have checked out, and by placing all debris in the room's trash can, James "relinquished h[is] reasonable expectation of privacy" in the room.  Id.  Therefore, James' Fourth Amendment rights were not implicated.  Id.

In Tugwell, the defendant was a passenger on a bus and had checked a grey suitcase.  Tugwell, 125 F.3d at 601-02.  After officers announced to the passengers that they would be conducting a drug-dog sniff of all luggage, Tugwell excused himself, saying he had to use the restroom.  Id.  Instead of using the restroom, he positioned himself so he could observe the officers' activities.  Id. at 602.  After seeing the drug dog alert to the grey suitcase, Tugwell left the premises without claiming his luggage.  Id.  The officers waited approximately 15 minutes, during which personnel for the bus company made two announcements asking the owner of the grey suitcase to claim it.  Id.  When no one responded to the announcements, the police opened the suitcase and found drugs inside.  Id.  Tugwell returned to the bus terminal two hours later and tried to claim the suitcase "for a friend," but ultimately admitted he was the owner of the suitcase.  Id.

The Eighth Circuit held that under the totality of the circumstances, Tugwell abandoned the suitcase and had no reasonable expectation of privacy

8

in it when the officers searched it.  Id. at 603.  Key to the court's conclusion were that Tugwell left after witnessing the drug dog's alert, he left the suitcase unguarded and unlocked in a public place, and he did not claim the bag after several announcements were made by bus employees asking the owner to claim the bag.  Id.  The court held Tugwell's later attempt to claim the suitcase did not change the court's conclusion, characterizing Tugwell's actions as "transparently an abandonment of the tight grip of ownership and reliance solely on the feeble hope of re-acquisition."  Id. citing United States v. Williams, 569 F.2d 823, 826 (5th Cir. 1978)).

A verbal denial of ownership is not necessary for a finding of abandonment.  United States v. Liu, 180 F.3d 957, 960 (8th Cir. 1999) (citing California v. Hodari D., 499 U.S. 621, 624 (1991)).  In Liu, the Eighth Circuit held Liu had clearly abandoned his bag on a train where he left the train without attempting to claim his bag, and started to run when police attempted to make contact with him.  Liu, 180 F.3d at 960.  Liu's action in running away from the train was clear evidence of his abandonment of the bag on the train. Id.

Nowak argues most abandonment cases involve a suspect's abandonment of his property in a public place while here, Nowak left his backpack in a private vehicle.  Where the item was left, however, is only a factor in the totality of the circumstances and is not necessarily determinative of whether the item has been abandoned.

9

In <u>United States v. Thomas</u>, 451 F.3d 543, 545 (8th Cir. 2006),
defendant Jeffrey Thomas rented a private mail box from Mail Boxes Etc.
When officers went to Mail Boxes Etc. to investigate, the owner of the store told
the officers that Thomas had not come to pick up the mail or to pay for the
mailbox rental in more than one year. <u>Id.</u> at 546. The officers took Thomas'
mail, which the Mail Boxes Etc. employee indicated was going to be thrown
away, and the officers ultimately opened the mail. <u>Id.</u> The court held that
Thomas had abandoned his mail and had no reasonable expectation of privacy
in it any longer. <u>Id.</u> There was a provision in Thomas' rental agreement that
authorized, but did not require, Mail Boxes Etc. to destroy any mail left
unclaimed for 30 days. <u>Id.</u> The court held that this was not tantamount to an
affirmative order from Thomas to Mail Boxes Etc. to destroy his mail. <u>Id.</u>

A person does not abandon property simply because he places it in
another's possession to store. <u>United States v. Basinski</u>, 226 F.3d 829, 834
(7th Cir. 2000). In a bailment, the bailee does not obtain title to the item, but
ownership instead remains with the bailor. <u>Id.</u> If the facts show that the
defendant placed his property with a third party with instructions or a request
to store the item, there is no abandonment. <u>Id.</u> In <u>Basinksi,</u> the defendant
asked his friend to store his briefcase for him, and eventually asked the friend
to burn the briefcase. The friend did not burn the briefcase but instead turned
it over to the FBI and gave them permission to search it. Under the facts of
that case, the Seventh Circuit held the defendant had not abandoned the

briefcase and the friend did not have authority to consent to the search. Basinski, 226 F.3d at 838-39.

Likewise, in United States v. James, 353 F.3d 606, (8th Cir. 2003), where the defendant asked a friend to store some computer disks for him in an envelope marked with defendant's name and a warning that the contents of the envelope were "confidential classified, . . .danger, private," the court held that the defendant had not abandoned the disks.[4] Id. at 616.

In United States v. Chandler, 197 F.3d 1198, 1200 (8th Cir. 1999), the defendant was a police officer who left his duty bag at the police station when he was suspended from duty.  The court held that this was "not strong evidence of abandonment."  Id.  However, the officer left the bag in his superior officer's office, rather than his own locker or office.  Id.  He then failed to reclaim or even inquire about the bag over a period of eight months.  Id. at 1201.  During this time frame, the defendant did make inquiry about retrieving a pair of boots from his locker.  Id. at 1199.  When he was told he could retrieve the boots if he consented to a search and inventory of the locker's contents, the defendant dropped his request for his boots.  Id.  Although these facts were "ambiguous," the court affirmed the district court's finding that the defendant had abandoned his duty bag and no longer had a reasonable expectation of privacy in it.  Id. at 1200-01.

---

[4] This case is unrelated to the prior case cited in this opinion, also entitled United States v. James.

11

That the defendant left her purse in her friend's vehicle rather than a public place did not preclude a finding of abandonment in United States v. Anderson, 2009 WL 3698435 at * 5 (E.D. Mo., Nov. 3, 2009).  In Anderson, the defendant was traveling in her friend (Green's) car.  Id. at *1. She put her purse and some other luggage in the car and proceeded to several different locations before police stopped the vehicle.  Id. at *1-2.  After the vehicle was stopped, the officers requested permission to search the vehicle and its contents, including Anderson's purse which was in the hatchback section of Green's vehicle.  Id. at *2.  Green signed a consent form, but before beginning the search, the officers asked Anderson whether the purse in the hatchback was hers.  Id. at *2-3.  She did not verbally respond but shook her head "no." Id. at *3.  The Court noted no verbal disclaimer of ownership is required for a finding of abandonment, and physical relinquishment of the property is an important factor in the analysis.  Anderson, 2009 WL 3698435 at * 4.  The Court concluded Anderson abandoned any privacy interest in her purse and upheld the warrantless search.  Id.

A fanny pack left at a friend's home without the friend's permission was likewise abandoned in United States v. Johnson, 2008 WL 3876550 at *2 (5th Cir., August 21, 2008). In that case, Johnson and Williams were standing in front of Johnson's house when police approached and asked to speak with the men.  Id. at *1.  Johnson pulled Williams into the house where Williams was staying (his sister-in-law's house) which was across the street and asked to

12

leave his fanny pack there.  Id.  Williams refused, but Johnson left the fanny pack anyway and the men went back outside.  Id.  The police entered the sister-in-law's house, found the fanny pack, searched it, and found illegal weapons and drugs.  Id.  Johnson claimed the search violated the Fourth Amendment but the Fifth Circuit disagreed.  Id.  The court found it significant that there was no evidence the owner of the home ever gave Johnson permission to store his fanny pack there, and "Johnson had no right to object to the consensual search of 4729 Odell Street, had no reasonable expectation of privacy in the contraband he left there, and cannot complain that the results of the search were used against him."  Johnson, 2008 WL 3876550 at *3.  The Fifth Circuit rejected Johnson's claim that he did not intend to relinquish ownership of the fanny pack:  "[H]e need not have abandoned the searched item in the strict property sense, where an intent to relinquish ownership must be shown; mere intent voluntarily to relinquish his privacy interest is sufficient."  Id. at *4 (citation omitted).  The court concluded that when Johnson abandoned his fanny pack at the Williams home without permission "he could not have reasonably expected that the contents of the fanny pack would remain private."  Id.

Finally, the Eighth Circuit decided luggage left in the trunk of a friend's car was abandoned by the defendant and therefore legally searched based on the friend's consent in United States v. Ruiz, 935 F.2d 982, 985 (8th Cir. 1991).  Ruiz arrived in Bloomington, Minnesota on a bus with a companion.

13

Id. at 983.   He and the companion were met across the street from the bus station by friends driving two different cars (Pontiac and Chevrolet).  Id.  Ruiz placed his luggage in the Chevrolet, but then got into the Pontiac as a passenger.  Id.  The police stopped the group before they left the parking lot. Id.  They asked Ruiz for permission to search his luggage, referring to the luggage in the Chevrolet.  Id.  Ruiz denied the luggage in the Chevrolet was his, even after the police told him they saw him place luggage into the Chevrolet. Id.  The police then asked the driver of the Chevrolet for permission to search the luggage in the trunk.  Id.  She gave permission, and the search of the luggage revealed drugs.  Id.  The Eighth Circuit held Ruiz abandoned his interest in the luggage, and that the police believed (despite Ruiz' claim otherwise) the luggage belonged to Ruiz did not negate the abandonment. Ruiz, 935 F.2d at 985.  ("Both Ruiz' words and actions support the district court's conclusion that he intended to abandon the luggage.").

Considering the totality of circumstances the court concludes Nowak abandoned his backpack when he left it in Madsen's vehicle.  Specifically, there is no evidence Nowak left the backpack with Madsen with instructions to keep it for him or store it or for safekeeping, as in United States v. James, 353 F.3d 606, (8th Cir. 2003) or to destroy it so the police could not discover its contents as in United States v. Basinski, 226 F.3d 829, 834 (7th Cir. 2000).  There is no evidence Madsen knew anything about the backpack other than Nowak entered the vehicle with it only a few moments before the traffic stop.  Nowak gave no

14

notice he was going to leave it with Madsen, and there is no evidence he asked Madsen's permission to leave it in the vehicle when Nowak ran from the scene. Nowak's first attempt to leave, and then ultimately running from the scene despite Vander Velde's request for him to sit in Madsen's vehicle, and Nowak's failure to return during the approximate twenty-four minute duration of the traffic stop is further indication that Nowak abandoned the backpack. Tugwell, 125 F.3d at 601-02; Liu, 180 F.3d at 960.

Nowak, therefore, had abandoned the backpack and had no privacy interest in it when Vander Velde conducted the search and found the firearm which is the subject of this prosecution.

## C.   Consent

The Government also relies on the Madsen's consent to validate the search of Nowak's backpack.  Nowak asserts Madsen's consent to search the vehicle did not encompass the backpack and that Madsen had no authority to consent to search the backpack in any event.

Consent is a recognized exception to the search warrant requirement. United States v. Goldenstein, 456 F.2d 1006, 1009 (8th Cir. 1972).  "Consent to search . . . may be given either by the suspect or by some other person who has common authority over, or sufficient relationship to, the item to be searched.  Common authority is a function of mutual use, joint access, and control, and is a question of fact."  United States v. James, 353 F.3d 606, 613 (8th Cir. 2003) (internal citations omitted).

15

The facts of this case require a unique analysis because "[m]ost consent cases involve jointly occupied places and a roommate or cotenant who allows a search of shared space" and thus a "factual finding of common authority makes intuitive sense."  Id. (internal citation omitted).  In this case, the person who gave law enforcement consent to search and seize Nowak's property was an attenuated friend in temporary possession of the property (a bailee) who had given Nowak rides on only three or four occasions.  See James, 353 F.3d at 613.  There is no evidence Madsen had common authority over or mutual use of the backpack or that Nowak left any particular instructions about what Madsen should do with the backpack.  To further complicate the matter, the property was a closed, unlocked container located within Madsen's vehicle.

**1.      Apparent Authority to Consent to Search and Bailment**

The James court summarized bailment within the context of a search and seizure as follows:

> [A]lthough a bailee of a concealed item may have potential physical access to the inner contents of the item (he can pick the lock, break the seal; open up the storage bin), this kind of access does not mean the bailee has actual authority to look at the contents of the items, or to consent to another's searching them.  Put another way, one does not cede dominion over an item to another just by putting him in possession. . . .  Therefore, in order to show the validity of [the bailee's] consent, the government needed to introduce evidence of authority beyond the mere act of storage.

Id. at 614.

A key consideration in this inquiry is whether the bailor had a reasonable expectation that the stored items would remain private.  Id.  In

16

<u>James</u>, the defendant asked his long-time friend, Mr. Laschober, to store ten computer back-up discs, which the police later found held digital images of child pornography.  <u>Id.</u> at 611.  After being arrested for several counts of sexual misconduct with a child, the defendant attempted to smuggle a letter out of jail asking Mr. Laschober to destroy the computer discs.  <u>Id.</u>  The police intercepted the letter and sent detectives to Mr. Laschober's home.  <u>Id.</u>  Mr. Laschober confirmed he still had the discs and that detectives could open and review them.  <u>Id.</u>  The detectives then asked Mr. Laschober if they could take the discs with them, and he consented, signing a modified consent form.  <u>Id.</u>

The discs were in a sealed envelope, and the top disc had an attached note that read, " 'CD VIRUS DANGER, CONFIDENTIAL CLASSIFIED, VIRUS RESEARCH PROJECT CONTAMINATED CD–DANGER PERSONAL PRIVATE.' " <u>Id.</u>  Further, the discs could only be opened using a sophisticated computer system by a person with advanced training.  <u>Id.</u>  The court found persuasive that the defendant never told his friend he could look at the discs or show them to anyone else.  <u>Id.</u> at 614.  The court determined these measures, taken as a whole, demonstrated the defendant intended the discs to remain private. <u>Id.</u>  The court had "a definite and firm conviction that [the defendant's friend] had no common authority either to look at the contents of the discs, or to allow anyone else to do so . . ." <u>Id.</u> at 615.  Therefore, the court held the warrantless search and seizure of defendant's property violated the Fourth Amendment

17

because "there was no valid exception to the warrant requirement justifying the detectives' behavior." Id. at 617.

The facts of James contrast with United States v. Martinez, 450 F.2d 864 (8th Cir. 1971), another Eighth Circuit case dealing with a bailment situation within the context of a search and seizure. In Martinez, the defendant stored boxes of stolen merchandise in the walkout basement-garage owned by Terry Burris. Martinez, 450 F.2d at 865. Burris used the garage for storage and for parking. Id. Defendant offered to rent the space, but Mr. Burris was noncommittal. Id. Defendant then gave Burris a combination padlock to be placed on the door and the combination for the padlock. Id. Acting upon information from an informant, the police went to the Burris home and gained permission from Burris to search the secured garage. Id. The police copied identification numbers from the defendant's stored boxes and, pursuant to a search warrant issued the next day, seized the boxes. Id. The court held the following:

> [A third party's] legal and possessory rights to the premises or items searched, his relationship to the subject of the search and the circumstances as they objectively appear to the police at the time of the search are all to be considered in determining whether the third party possessed an independent right to consent to a warrantless search by the police which will operate to foreclose subsequent attempts at suppression by the subject of the search.

Id.

The court reasoned that because Burris continued to use the space for his own purposes, the defendant "clearly had no exclusive control nor right to exclusive possession of the premises. In these circumstances he assumed the

18

risk that Burris would allow others in the area." Id. at 866.  The court concluded that Burris' consent to the search of defendant's possessions was valid.  Id.

A warrantless search is also valid if detectives reasonably believed the third party "had the authority to consent [to the search or seizure], even if he did not in fact have it.  James, 353 F. 3d at 615.  "[T]he rule for law-enforcement officers' reliance on a consenting party's apparent authority 'is not that they always be correct, but that they always be reasonable.'"  Id. (quoting Illinois v. Rodriguez, 497 U.S. 177, 185-86 (1990)).  The James court asked "would the facts available to the police officer at the time the consent is given warrant a person of reasonable caution in the belief that the consenting party had authority over the item to be searched?"  Id. (citing Rodriquez, 497 U.S. at 188; United States v. Sanchez, 32 F.3d 1330, 1333-35 (8th Cir. 1994)).

In determining if a defendant has an objectively reasonable expectation of privacy, the court will also consider whether defendant "took measures to protect those interests."  United States v. Mendoza, 281 F.3d 712, 715 (8th Cir. 2002).  See also James, 353 F.3d at 614, (holding the circumstances as a whole in that case showed the defendant took such measures, and his friend/bailee did not have common authority to look at the disks or allow anyone else to look at them).

In this case, there is no evidence that Nowak gave permission for Madsen to open or dispose of the backpack.  But there is also no evidence Nowak took

19

any measures to protect his privacy interest in the backpack.  He simply left the backpack in Madsen's vehicle when he fled the traffic stop, with no explanation to Madsen about what to do with it or why he was fleeing the scene.  Nowak left the backpack in a place over which Madsen had complete control and Nowak had no control.  The backpack was zipped shut but not secured with a lock or any other means of protecting its contents from viewing by Madsen or anyone else.  There is no evidence Nowak instructed Madsen not to open the backpack or to prohibit others from doing so.

### 2. Apparent Authority and Consent to Search an Automobile

Nowak does not dispute that Madsen gave Vander Velde consent to search Madsen's vehicle. As a general rule, consent to search a vehicle encompasses the search of closed, unlocked containers within the vehicle. United States v. Siwek, 453 F.3d 1079, 1085 (8th Cir. 2006) (citing Florida v. Jimeno, 500 U.S. 248, 252 (1991)).  Nowak claims, however, that because Vander Velde knew the backpack belonged to Nowak not Madsen, Vander Velde's reliance on Madsen's consent to search the backpack was not reasonable.  In support of his argument, Nowak relies upon United States v. Munoz, 590 F.3d 916 (8th Cir. 2010) and United States v. Iraheta, 764 F.3d 455 (5th Cir. 2014).

In Munoz, the driver gave consent to search the vehicle and the officer searched it, including the passenger's backpack.  The passenger was present but did not hear the driver give consent to search, and did not independently

give consent to search his backpack.  The Eighth Circuit held the search of the backpack was invalid because the driver had no common authority over the backpack and his consent (or object) to search did not include the backpack. Munoz, 590 F.3d at 923.  The Court noted "[a]n officer cannot rely on a third party's consent to intentionally bypass a person who is present, has a superior privacy interest in the premises, and actively objects to the search."  Id. at 922. "However, a search is lawful where officers reasonably rely on the consent of a third party who demonstrates apparent authority to authorize the search, even if the third party lacks common authority."  Id. (citation omitted, punctuation altered).

In Iraheta, the driver consented to the police officer's request to search the vehicle.  Iraheta, 764 F.3d at 458.  There were, however, two passengers in the vehicle.  Id. at 463.  The court held "Iraheta clearly did not have actual authority to consent to the search of multiple pieces of luggage in the trunk of a vehicle occupied by him and two passengers."  Id.  Regarding apparent authority, the court noted there must be "a finding that the searching officers reasonably (though erroneously) believed that the person who has consented to their search had the authority to so consent."  Id. (citation omitted).  The court determined the number of bags in the trunk put the officers on notice that Iraheta "could not give consent to a search of all of the bags in the trunk."  Id. at 464.

The crucial difference between this case and <u>Munoz</u> and <u>Iraheta</u> is that in this case the owner of the searched item (Nowak) chose to make himself unavailable to consent to the search.  When Harry Madsen gave consent to search the vehicle, Cody Nowak was not "actively objecting" to the search because he was nowhere to be found.  Vander Velde did not "intentionally bypass" Nowak's privacy interest—on the contrary,  Vander Velde requested Nowak to remain in the vehicle but Nowak fled the scene.  Vander Velde requested the assistance of two other patrol cars to locate Nowak, to no avail.

The case which controls here is <u>United States v. Ruiz</u>, 935 F.2d 982, 985 (8th Cir. 1991).  In <u>Ruiz</u> the Eighth Circuit discussed consent to search luggage abandoned by the owner in a third-party's vehicle.  <u>Id.</u> at 984-85.  In doing so, the Court cited <u>United States v. Impink</u>, 728 F.2d 1228 (9th Cir. 1984). "T]he police may not rely on third-party consent if a person with a higher expectation of privacy is present and actively objects to the search."  <u>Ruiz</u>, 935 F.2d at 984 (citing <u>Impink</u>, 728 F.2d at 1234).  "Therefore, the threshold question is whether Ruiz had a higher expectation of privacy in the luggage at the time of the search than [the person who gave consent] did."  <u>Ruiz,</u> 935 F.2d at 984. The Court found that by the time the search occurred, Ruiz had abandoned his interest in the luggage.  <u>Id.</u>  As such, the driver, who consented to the search, "had the greater expectation of privacy in the luggage because it was stored in the trunk of her car.  Consequently, her consent validated the warrantless search."  <u>Id.</u> at 985, (citing <u>Florida v. Jimeno</u>, 500 U.S. 248 (1991) for the

22

proposition that consent to search a vehicle extends to closed containers within the vehicle.).

### 3. Vander Velde Reasonably Relied on Madsen's Consent to Search

"[T]he rule for law enforcement officers' reliance on a consenting party's apparent authority is not that they always be correct, but that they always be reasonable." James, 353 F.3d at 615.  The appropriate question, therefore in a consent to search case is "would the facts available to the officer at the time the consent is given warrant a person of reasonable caution in the belief that the consenting party had authority over the item to be searched?" Id.  In this case, considering the totality of the circumstances, the court concludes the answer is "yes."

Although Vander Velde knew Nowak owned the backpack, Vander Velde observed Nowak flee the traffic stop, thereby abandoning the unlocked, unsecured backpack in Madsen's vehicle.  Madsen told Vander Velde he did not know why Nowak fled, and that Nowak did not say anything before he ran. Under these circumstances, Nowak did nothing to protect his privacy interest in the backpack.  As such, Vander Velde reasonably believed the backpack had been abandoned by Nowak, and that Madsen's consent to search the vehicle validly encompassed the backpack, which was unlocked and contained within Madsen's vehicle. Tugwell, 125 F.3d at 601-02; Liu, 180 F.3d at 960; Mendoza, 281 F.3d 715; James, 353 F.3d at 615; Siwek, 453 F.3d 1079, 1085; Ruiz 935 F.2d at 985.

## **CONCLUSION**

For the reasons more fully explained above, it is recommended that Nowak's Motion to Suppress (Docket 22) be DENIED.

## **NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 9th day of January, 2015.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge