UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CODY ALLEN NOWAK,<br><br>Defendant. | 4:14-CR-40118-KES<br><br><br>ORDER ADOPTING REPORT AND RECOMMENDATION DENYING MOTION TO SUPPRESS |

**NATURE AND PROCEDURE OF CASE**

Defendant, Cody Allen Nowak, is charged with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Nowak moves to suppress all physical evidence seized from a backpack that was located on the floorboard of a vehicle driven by third-party Harry Madsen. Nowak contends the backpack and its contents are the fruits of an illegal search, which violated the Fourth Amendment to the United States Constitution. Docket 22. The motion was referred to a United States magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

During the evidentiary hearing, testimony from one law enforcement officer was presented, and one exhibit was received into evidence. The magistrate judge issued a report and recommended denial of Nowak's motion to suppress. Docket 31. Nowak objects to the report and recommendation. Docket

40. For the following reasons, the report and recommendation is adopted as modified by this opinion.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1)(A); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

According to the testimony given and the exhibit introduced at the evidentiary hearing, the pertinent facts are as follows:

Officer Scott Vander Velde was on duty on August 7, 2014. Vander Velde was parked near a Sioux Falls residence when he noticed that a vehicle with expired tags had pulled up nearby. Vander Velde observed an individual enter the passenger side of the vehicle, although he could not identify who it was. Because the vehicle had expired tags, Vander Velde initiated a traffic stop. The

2

vehicle pulled over in front of a casino at 11th Street and Prairie Avenue in Sioux Falls. Vander Velde pulled into the casino parking lot and parked behind the stopped car. The passenger emerged from the vehicle, and Vander Velde recognized him as Nowak from a previous encounter. Vander Velde instructed Nowak to get back in the vehicle, and Nowak complied. A short time later, however, Nowak exited the vehicle for a second time and fled the scene. [1]

Vander Velde did not pursue Nowak. Instead, he remained near the stopped vehicle and spoke with its driver. The driver identified himself as Harry Madsen. Madsen stated that Nowak had called him and asked for a ride, and that he "[didn't] know what was going on." Vander Velde observed a backpack in the passenger side of the car, and asked Madsen whether it belonged to Nowak. Madsen responded that it did, and that Nowak had the backpack with him when Madsen picked him up. Madsen stated that the backpack was not his, and he gave Vander Velde permission to search the vehicle.

At Vander Velde's direction, Madsen stepped out of the car. When Vander Velde asked how Madsen knew Nowak, Madsen replied that Nowak was an acquaintance of his wife's son. Madsen then stated that he would occasionally give Nowak a ride, and that he "[didn't] ask anything because he's a friend." Vander Velde asked if Madsen knew where Nowak wanted to be taken, and Madsen responded that he did not know. Madsen added that he "was amazed" by Nowak's sudden departure.

---

[1] The video from Vander Velde's dash camera was submitted as part of an evidentiary exhibit and begins at this time, although there is no audio until immediately before Nowak flees the area.

3

A few minutes later, Vander Velde conducted a brief visual inspection of the interior of Madsen's vehicle. A K-9 unit arrived on the scene, and Vander Velde told the K-9 officer what had transpired.[2] The officers discussed searching the backpack, and the K-9 officer opined that Nowak "doesn't have any expectation of privacy in abandoned property." Vander Velde concurred, also noting that Madsen had given them consent to search the vehicle.

Following this conversation, the K-9 officer had a drug dog enter Madsen's vehicle from the passenger side and conduct a sniff of the interior. The dog did not alert. Vander Velde then removed the backpack from the vehicle and placed it on the trunk of the car. Vander Velde testified that the compartments of the bag were shut, and that he could not see into it. Vander Velde opened the backpack in the presence of the other officers and, among several other items, discovered a firearm wrapped in a red bandana. Vander Velde retained the firearm, but returned the backpack with the rest of its contents to Madsen.

The firearm discovered in the backpack is the subject of this prosecution. Vander Velde did not specifically ask for permission to search the backpack, although Madsen gave his consent to search the vehicle. Approximately twenty minutes elapsed between the time Nowak fled the scene and the time Vander Velde searched through the contents of the backpack. Vander Velde testified

---

[2] Several other officers eventually arrived at the scene. In addition to the video from Vander Velde's dash camera, two other dash camera videos were included in the evidentiary exhibit. Those videos depict officers' attempts to locate Nowak before ultimately arriving at the scene.

4

that he was not aware of any warrants for Nowak's arrest at the time of the traffic stop. Nowak did not return to the scene, and Vander Velde testified that he did not believe Nowak was going to return.

## DISCUSSION

Generally, the Fourth Amendment requires that law enforcement officers secure a warrant before conducting a search of a person's property. *See, e.g.*, *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011); *Smith v. Ohio*, 494 U.S. 541, 542 (1990). There are several, albeit limited, exceptions to the warrant requirement. *See, e.g.*, *United States v. Karo*, 468 U.S. 705, 717 (1984). An individual must have standing to challenge the legality of a search. *Rakas v. Illinois*, 439 U.S. 128, 134 (1978); *Brown v. United States*, 411 U.S. 223, 230 (1973). To have standing, a person must have a reasonable expectation of privacy in what was searched. *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994). A reasonable expectation of privacy is defined as a "subjective expectation of privacy in [the property] that society accepts as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39 (1988). Thus, "[i]f a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." *Gomez*, 16 F.3d at 256. (citing *United States v. Sanchez*, 943 F.2d 110, 113 (1st Cir.1991)).

5

The government contends that Nowak abandoned the backpack and therefore cannot challenge its search. Docket 26 at 2. "A warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment." *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997); *see also United States v. Sanders*, 130 F.3d 1316, 1317 (8th Cir. 1997) ("It is therefore firmly established that a warrantless search of abandoned property is not unreasonable and does not violate the Constitution."). The Eighth Circuit has elaborated on the significance of abandoned property in the Fourth Amendment context, instructing that,

> The issue "is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished her reasonable expectation of privacy so that the search and seizure is valid." *United States v. Hoey*, 983 F.2d 890, 892-93 (8th Cir. 1993) (other citations omitted). Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent. *See United States v. Rem*, 984 F.2d 806, 810 (7th Cir. 1993). "This determination is to be made in light of the totality of the circumstances, and two important factors are denial of ownership and physical relinquishment of the property." *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986). We consider only the information available to the officers at the time of the search. *See Rem*, 984 F.2d at 811 ("In order to determine whether a pre-search abandonment has occurred, the flow of information considered stops at the moment the police officer opened the suitcase.").

*Tugwell*, 125 F.3d at 602. Because any expectation of privacy in a piece of property becomes forfeited upon its abandonment, individuals lack standing to contest a search of such property. *United States v. Liu*, 180 F.3d 957, 960 (8th Cir. 1999).

6

Although a defendant seeking the suppression of evidence bears the burden of proving he or she had a reasonable expectation of privacy that was violated, *United States v. Hayes*, 120 F.3d 739, 743 (8th Cir. 1997), the government bears the burden of proving an abandonment of property occurred. *United States v. James*, 353 F.3d 606, 616 (8th Cir. 2003). The magistrate judge's report and recommendation surveyed a number of cases discussing circumstances under which property may or may not have been abandoned. *See* Docket 31 at 7-14. The report then found that, based on the totality of the circumstances here, Nowak's backpack was abandoned. *See id.* at 14. Specifically, the report emphasized that Nowak did not leave any instructions with Madsen for the backpack's storage, safekeeping, or directions to destroy it to prevent police or others from discovering its contents. *Id.* There was no evidence that Madsen knew anything specific about the backpack, other than that Nowak had it with him when he entered the vehicle. *Id.* There were also no facts suggesting that Nowak asked Madsen's permission to leave the backpack in his vehicle before Nowak ran away. *Id.* at 15. As for Nowak's departure, Nowak exited the car during the traffic stop after Vander Velde had ordered Nowak to return to the vehicle. *Id.* Although Nowak briefly complied, he exited the vehicle again and fled the scene without leaving any indication that he would return. *Id.* Therefore, the report concluded, the circumstances showed that Nowak had abandoned the backpack. *Id.*

Nowak contends that the cases relied upon in the report are either distinguishable or otherwise militate against finding the backpack had been

abandoned. *See* Docket 40 at 5-9. Nowak also argues that additional circumstances not relied on in the report show that he did not abandon the backpack. *Id.* at 10. For example, officers found the backpack located in the passenger seat, which is where Nowak was located. *Id.* The backpack was zipped up and its contents could not be seen. *Id.* Although Nowak fled the scene, he left the backpack in a private vehicle that belonged to a friend rather than in a public location where anyone could have discovered it. *Id.* While the report indicates that Nowak did not instruct Madsen on what to do with the backpack, Nowak argues that Madsen did not refuse its possession. *Id.* Further, Nowak never denied ownership of the backpack. *Id.* at 10-11. Thus, he argues, the totality of the circumstances shows that the backpack was not abandoned.

The facts in *United States v. Ruiz*, 935 F.2d 982 (8th Cir. 1991) illustrate one situation where a passenger abandoned his privacy interest in bags located inside a vehicle. Ruiz arrived at a bus station carrying two pieces of luggage. *Id.* at 983. Another man was with Ruiz and was also carrying a piece of luggage. *Id.* They were met in a nearby parking lot by several other individuals who were driving two vehicles—a white Pontiac and a blue Chevrolet. *Id.* Ruiz placed his bags in the trunk of the Chevrolet but sat in the passenger seat of the Pontiac. *Id.* The man accompanying Ruiz kept his bag and joined Ruiz in the Pontiac. *Id.* Police had been observing the individuals and stopped them before they could leave the area. *Id.* One officer asked Ruiz if he could search Ruiz's luggage, referring to the bags in the back of the Chevrolet. *Id.* Ruiz stated several times

8

that his luggage was in the Pontiac and not in the Chevrolet, and that the officer could look in the bag in the Pontiac. *Id.* Although the officer told Ruiz that he saw him place two bags in the trunk of the Chevrolet, Ruiz maintained that those bags did not belong to him. *Id.*

Another officer questioned the driver of the Chevrolet, who gave the officers permission to search the vehicle. *Id.* A search of the Chevrolet's trunk yielded two pieces of luggage. *Id.* Inside one of the bags, which was zipped but unlocked, was approximately one pound of cocaine. *Id.* Ruiz sought to suppress the cocaine found in the bag, but the district court concluded the bags were abandoned.

The Eighth Circuit agreed that Ruiz abandoned the luggage, noting that he disclaimed any ownership in the bags that were in the trunk of the Chevrolet. *Id.* at 984. Ruiz argued that the officers nonetheless knew he was lying because they saw him put the luggage in the Chevrolet. *Id.* The court found, however, that did not necessarily mean the officers knew the bags belonged to Ruiz, and his disclaimer indicated that he was "relinquishing any privacy interest he might have had in the suitcases." *Id.* Also, because Ruiz placed the bags in one vehicle but sat in another, that fact further indicated he was abandoning his privacy interest in them. *Id.* at 984-85. Thus, Ruiz's "words and actions" supported the district court's conclusion that the luggage was abandoned. *Id.* at 985.

The facts of *Ruiz* overlap with the facts in the present case in several ways. Like *Ruiz*, Nowak was observed entering the passenger seat of a vehicle.

9

And here, like the driver in *Ruiz*, Madsen gave Vander Velde permission to search the vehicle.

*Ruiz* nonetheless differs from this case in the type of conduct the defendant engaged in that suggested his property was being abandoned. In *Ruiz,* the defendant affirmatively denied his ownership in the property. *See Ruiz*, 935 F.3d at 983 (noting Ruiz continued to disclaim ownership in the bags even after the officer told him he had seen Ruiz place them in the Chevrolet). Here, Nowak ran away from his backpack and because he did not return, he did not have an opportunity to be asked about his ownership of the backpack before it was opened. Nowak contends the lack of a denial of ownership distinguishes his case from *Ruiz*. *See* Docket 40 at 5.

An explicit denial of ownership, however, is not required for a person's privacy interest in their property to be abandoned. Docket 31 at 9. In *Liu*, 180 F.3d at 960, the Eighth Circuit noted that it was "without dispute that Liu never verbally denied ownership of the bag; indeed, he affirmed his ownership more than once." But the defendant "may have abandoned the bag by physical relinquishment, even while claiming ownership, since a verbal disclaimer of ownership is not required for a finding of abandonment." *Id.*

Illustrative of this point is *United States v. Segars*, 31 F.3d 655, 658 (8th Cir. 1994), where the defendant "dropped [a] package, backed away from the apartment door, and attempted to flee" when officers confronted him in an apartment building. The Eighth Circuit agreed that the evidence supported a finding that the defendant had abandoned the package he was carrying. *Id.*

10

Likewise in *United States v. Simpson*, 439 F.3d 490, 494 (8th Cir. 2006), the defendant discarded a rifle and magazine while being chased by police. Not only was the evidence physically relinquished, but the Eighth Circuit agreed that the defendant "was attempting to disclaim ownership over this evidence so authorities could not trace the objects back to him." *Id.* And in *United States v. Landry*, 154 F.3d 897, 899 (8th Cir. 1998), the defendant's act of placing an item near a dumpster and walking fifty feet away to a pay phone was sufficient to abandon his expectation of privacy in the item.

Nowak contends that these cases are distinguishable because the acts of physical relinquishment left the defendants' property in areas accessible to the general public. *See e.g.*, Docket 40 at 5; 10. For example, the events in *Liu* unfolded at a public train station. Likewise, the defendants in *Landry* and *Simpson* placed or threw their property on the ground. By contrast, Nowak argues that he "left the scene, but left the backpack in the possession of a private vehicle, not in any place generally accessible to the public." *Id.* at 10. It is true that individuals do not have an expectation of privacy in property that has been left out and exposed to the general public. *See, e.g.*, *United States v. Williams*, 669 F.3d 903, 905 (8th Cir. 2012) (concluding there is no reasonable expectation of privacy in trash left on the curb for pickup). It is also true, however, that passengers like Nowak generally do not have a reasonable expectation of privacy in a vehicle that belongs to someone else. *See, e.g.*, *Rakas*, 439 U.S. at 148-49. Thus, any privacy interest Nowak may have held in his backpack was not further shielded by Madsen's expectation of privacy in

his vehicle. *Id.* at 428 (stating "the 'rights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure.' " (alterations in original). And Madsen, as the person with an interest in the vehicle, gave police his permission to search the car. *Cf. United States v. Green*, 75 F.3d 694, 699 (8th Cir. 2001).

Further, it is not the particular location that makes the difference. *See Katz v. United States*, 389 U.S. 347, 351-52 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.) (citations omitted). Rather, the determination of whether an abandonment has taken place is based on all of the "objective facts available to the investigating officers." *Tugwell*, 125 F.3d at 602. Thus, as the Ninth Circuit observed, "[w]hile everyone who leaves luggage on an airplane cannot be said to have abandoned it, [the defendant] deliberately chose to leave the bag behind when requested by officers to leave the plane." *Nordling*, 804 F.2d at 1470. The court therefore agrees with the magistrate judge's conclusion that the location is to be considered as another factor in the totality of the circumstances analysis.

Nowak maintains that it was reasonable to infer either that Madsen would return the backpack to Nowak or that Nowak might reacquire it later.

Docket 40 at 4, 7, 10.[3] Nowak also contends that the backpack was found in a location "most associated with Nowak." *Id.* at 10. But "[r]egardless of whether [Nowak] intended to retrieve the bag, leave the bag for another person, or abandon the bag is not relevant to the issue of whether the objective facts available to the officers support a finding that [Nowak] abandoned the bag." *Landry*, 154 F.3d at 899; *see also Tugwell*, 125 F.3d at 602 (noting the occurrence of an abandonment is not based on the property owner's subjective intent). That Vander Velde found the backpack near where Nowak was seated or eventually discovered that the bag belonged to Nowak does not change the analysis. *Cf. Ruiz*, 935 F.2d at 984 (noting the defendant's disclaimer merely indicated "he was relinquishing any privacy interest he might have had in the suitcases.").

Here, Nowak chose to flee during a routine traffic stop and to leave his backpack behind in Madsen's vehicle, despite Vander Velde's previous instruction to stay in the car. When Nowak first emerged, he did not have the backpack on him. And when Nowak ran away, he similarly did not take the backpack with him. According to Vander Velde's testimony, Vander Velde did not see that Nowak was wearing or carrying the backpack when he first got

---

[3] Nowak also argues that there was no evidence Madsen refused possession of the backpack and that focusing on what Nowak did not do misplaces the government's burden of showing an abandonment took place. Docket 40 at 10-11. Vander Velde's conversation with Madsen shows that Madsen was merely driving Nowak to a destination that Madsen himself did not know, and that Nowak abruptly departed and left the backpack behind. Madsen stated several times the backpack belonged to Nowak, and he gave no indication Nowak asked him to look after it or that Madsen agreed in any way to look after it.

into Madsen's car. The first time Vander Velde noticed it was when he approached the vehicle after Nowak departed. As the only officer on the scene, Vander Velde had to decide whether he would stay with the vehicle he pulled over or to chase after its passenger who fled for no apparent reason. Vander Velde's conversation with Madsen revealed that Madsen had no idea why Nowak fled, and Madsen stated he simply knew Nowak as an acquaintance of his wife's son. Madsen consented to a search of his vehicle, and stated that the backpack was not his. The backpack itself was zipped shut, but it was not locked or further secured in any way. Other officers attempted to locate Nowak, but they were unable to find him. Nowak did not return, and the officers had no reason to think that he would. Based on the objective facts available, the court agrees with the magistrate judge's conclusion that Nowak had abandoned his privacy interest in the backpack. *See Sanders*, 130 F.3d at 1318 (explaining the Fourth Amendment "does not immunize people who, finding themselves in a compromising situation, voluntarily trade their interest in privacy for a chance to escape incrimination, no matter how unwise the decision may seem in retrospect."). Because Nowak had no privacy interest in the backpack, Nowak lacks standing to contest the search. And because Nowak lacks standing to contest the search, this court does not need to reach the alternative issue of whether Madsen's consent to search the backpack was sufficient.

## CONCLUSION

The court agrees with the report and recommendation's conclusion that the evidence obtained from the backpack should not be suppressed.

14

Specifically, the court agrees that Nowak abandoned his privacy interest in the backpack and that he lacks standing to contest its search and adopts that portion of the report and recommendation. Accordingly, it is

ORDERED that the report and recommendation is adopted as modified in this opinion, and the motion to suppress is denied consistent with this opinion.

Dated March 19, 2015.

BY THE COURT:

*/s/Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE